# In the United States Court of Federal Claims

BID PROTEST
No. 16-317C
Filed Under Seal July 19, 2016
Reissued for Publication August 8, 2016[*]

|  |  |  |
|---|---|---|
| SOS INTERNATIONAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 28 U.S.C. § 1491(b); Pre-Award |
| THE UNITED STATES, | ) | Bid Protest; Corrective Action. |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SIX3 INTELLIGENCE SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

*Richard Paul Rector*, Counsel of Record, DLA Piper US LLP, Washington, DC, for plaintiff.

*Daniel Kenneth Green*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; and *Major Cali Y. Kim* and *P. Daniel DiPaola*, Deputy Chief Counsel, United States Department of the Army, for defendant.

*Craig S. King*, Counsel of Record, *Richard J. Webber* and *Patrick R. Quigley*, Arent Fox LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 19, 2016 (docket entry no. 39), pursuant to the Protective Order entered in this action on March 11, 2016 (docket entry no. 13). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the Protective Order. The parties filed a joint status report on August 8, 2016 (docket entry no. 41) proposing certain redactions, which the Court has adopted. Accordingly, the Court is reissuing its Opinion and Order dated July 19, 2016, with the agreed upon redactions indicated by three consecutive asterisks within brackets ([***]).

## **MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff, SOS International LLC ("SOSi"), brought this pre-award bid protest matter challenging the United States Department of the Army's ("Army") proposed corrective action to address an alleged patent ambiguity regarding the page limitation requirements for proposals, in connection with a request for proposals to provide Intelligence Technical Support Services ("RFP").  SOSi has moved for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  The government has moved to dismiss this matter or, in the alternative, for judgment upon the administrative record, pursuant to RCFC 12(b)(1) and 52.1.  In addition, the defendant-intervenor, Six3 Intelligence Solutions, Inc. ("Six3"), has moved for judgment upon the administrative record, pursuant to RCFC 52.1. For the reasons set forth below, the Court:  (1) **DENIES** SOSi's motion for judgment upon the administrative record; (2) **GRANTS** the government's motion to dismiss or, in the alternative, for judgment upon the administrative record; and (3) **GRANTS** Six3's motion for judgment upon the administrative record.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

Plaintiff, SOS International LLC, challenges the Army's plan to take corrective action to address an alleged patent ambiguity regarding the page limitation requirements for responsive proposals in connection with a request for proposals to provide Intelligence Technical Services Support services ("ITSS Contract"), following the award of the contract for these services to the incumbent contractor, Six3 Intelligence Solutions, Inc.  *See generally* Compl.; AR at 1767. Specifically, SOSi alleges that the proposed corrective action is unreasonable because the RFP is

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the administrative record ("AR"); SOSi's memorandum in support of its motion for judgment upon the administrative record ("Pl. Memo."); the government's motion to dismiss or, in the alternative, for judgment upon the administrative record ("Def. Mot."); Six3's motion for judgment upon the administrative record ("Int. Mot."); and SOSi's reply to the government's and Six3's motion for judgment on the administrative record ("Pl. Rep.").

not ambiguous.  Compl. at ¶¶ 3-4, 5, 42.  As relief, SOSi requests that the Court enjoin the Army from implementing the proposed corrective action and direct the Army to re-evaluate the previously submitted proposals for the ITSS Contract "consistent with the terms of the existing RFP."  *Id.* at Reqs. for Relief ¶ 3; *see also id.* at ¶¶ 1, 3-5, 42, Reqs. for Relief ¶¶ 1-2, 4-5.

### 1.  The Request For Proposals

On March 25, 2015, the Army issued Request for Proposals No. W564KV-15-R-0004 to provide ITSS services in support of the Army.  AR at 176-240.  The RFP contemplates the award of an indefinite-delivery, indefinite-quantity contract with a one-year base period and four one-year options.  *Id.* at 335.  Specifically, the RFP provides that the Army will conduct the solicitation using a lowest-priced, technically acceptable methodology and that the award will be made to an offeror "whose proposal conforms to the solicitation requirements."  *Id.* at 336.  The RFP requires that the Army evaluate proposals using three evaluation factors−technical, past performance and price−and that the Army rate the technical and past performance factors as either acceptable or unacceptable.  *Id.* at 337-38.

### 2.  The RFP's Page Limitation Requirements

Specifically relevant to this dispute, the RFP requires that responsive proposals contain a volume for each of the three evaluation factors, and the RFP sets forth page limitation requirements for each volume of the responsive proposals.  *Id.* at 331-32.  In this regard, the Army issued an amendment to the RFP on April 17, 2015, which, among other things, includes a chart with the page limitation requirements for responsive proposals ("Page Limitation Chart").  *Id.* at 329-40.  The Page Limitation Chart provides as follows:

| Volume | Volume Title | Format | Page Limitation |
|--------|--------------|--------|-----------------|
| I | Solicitation, Offer and Award Documents and Certifications/ Representations | Word or PDF documents compatible with MS Word 2007 or Adobe Reader 9 | No page limitation |
| II | Technical to include: Table of Contents: -Summary   -Contract Management Plan/Business Arrangement | Word or PDF documents compatible with MS Word 2007 or Adobe Reader 9: | 50 page limit |

|   | | | |
|---|---|---|---|
|   | -Intelligence technical Support Capability<br>-Experience | | |
| III | Past Performance | Word or PDF documents compatible with MS Word 2007 or Adobe Reader 9 | 20 page limit |
| IV | Price | Excel document compatible with MS Excel 2007 | No page limitation. OFFERORS SHALL SUBMIT SCHEDULE B & PRICE EXHIBIT A.. |

*Id.* at 331.  The Page Limitation Chart provides that the page limit for the technical volume is 50 pages.  *Id.*  This chart further provides that the page limit for the past performance volume is 20 pages.  *Id.*

The RFP does not provide any guidance about how offerors, or the Army, should count tables of contents, summaries and/or reference pages for the purpose of determining compliance with the RFP's page limitation requirements.[2]  *Id.* at 176-240, 320-65.  But, the RFP provides that, "[i]f the page limits are exceeded, the pages in excess of the limit will be removed and not evaluated."  *Id.* at 231, 331.

The RFP's provision on proposal preparation instructions sets forth the specific requirements for each volume for the responsive proposals.  *Id.* at 332-36.  This provision also does not state whether offerors must include a table of contents, summary, or other reference pages in the technical volume.  *Id.*

### 3.  The Evaluation Of Proposals

Seven offerors submitted proposals in response to the RFP, including SOSi and Six3.  *Id.* at 366-1326.  It is undisputed that SOSi's proposal complied with the page limitation

---

[2] The RFP does, however, provide that, "[c]ontractor[s] shall number each page in order to eliminate any confusion.  In the event the Contractor creates an ambiguity in their numbering of pages, the Government may exercise its own discretion in counting pages."  AR at 332.  No offeror raised a question about whether tables of contents or other reference pages would be counted toward a proposal's total page count during the question and answer period for the RFP.  AR at 341-47.

requirements set forth in the RFP.  Pl. Memo. at 16; Def. Mot. at 6; Pl. Rep. at 2.  In this regard, the technical volume for SOSi's proposal is 50 pages, including a cover page, one reference page and 48 substantive pages.  AR at 1018-67.  In addition, the past performance volume for SOSi's proposal is 20 pages, including a cover page and 19 substantive pages.  *Id.* at 1068-87.

The parties disagree about whether Six3 complied with the RFP's page limitation requirements for its technical volume.  Compl. at ¶ 33; Pl. Memo. at 6-7; Int. Mot. at 22.  Six3's technical volume is 54 pages, including a cover page, three reference pages and 50 substantive pages.  AR at 903-56.  In addition, the past performance volume for Six3's proposal is 18 pages, including a cover page, one reference page and 16 substantive pages.  *Id.* at 957-74.

Two other offerors not involved in this dispute−[***] and [***]−also submitted responsive proposals that shed some light upon how various offerors interpreted the RFP's page limitation requirements.  Specifically, [***] submitted a technical volume that is 59 pages, including a cover page, nine reference pages and 49 substantive pages.  *Id.* at 562-620.  The past performance volume for [***] proposal is 21 pages, including a cover page, four reference pages and 16 substantive pages.  *Id.* at 621-41.  In addition, [***] submitted a past performance volume that is 21 pages, including a cover page, one reference page and 19 substantive pages.  *Id.* at 497-517.

The source selection evaluation plan for the RFP provides that a Source Selection Evaluation Board ("SSEB") would evaluate the responsive proposals and, thereafter, the Source Selection Authority ("SSA") would conduct a second, independent evaluation.  *Id.* at 129-31.  To that end, the SSEB conducted its evaluation of the proposals−including the proposals submitted by SOSi and Six3−on August 26, 2015.  *Id.* at 1676-732; Def. Mot. at 7.  During this evaluation, the SSEB evaluated all of the pages submitted for each proposal.  Def. Mot. at 7; Pl. Rep. at 20-21; *see* AR at 1676-732.  Based upon this evaluation, the SSEB concluded that the proposals submitted by SOSi, Six3, [***] and [***] were technically acceptable.  AR at 1685, 1691, 1697, 1708.  The SSEB further found that Six3's proposal offered the lowest price.  *Id.* at 1732.  And so, the SSEB concluded that Six3 submitted the lowest-priced, technically acceptable offer for the ITSS Contract.  *Id.*

During the SSA's subsequent evaluation of the responsive proposals, the SSA disregarded the last four pages of Six3's technical volume because the SSA found that the

5

volume exceeded the RFP's 50-page limit. *Id.* at 1737. The SSA similarly disregarded portions of the technical volume and of the past performance volume submitted by [***], because the SSA concluded that these volumes also exceeded the RFP's page limitation requirements. *Id.* at 1737, 1743.

With respect to Six3's proposal, the SSA found that the SSEB "improperly considered and relied upon the four excess pages when determining that Six3 was '[a]cceptable' for the experience sub factor [sic] . . . ." *Id.* at 1737. Nonetheless, the SSA utilized "close at hand" information contained in Six3's past performance volume, as well as "personal awareness of Six3's experience as the incumbent contractor for [the] ITSS requirement" to conclude that Six3's proposal was technically acceptable. [3] *Id.* Although the SSA also found that SOSi, [***], [***] and another offeror, [***], submitted technically acceptable offers, the SSA ultimately concluded that Six3's proposal offered the lowest price. *Id.* at 1734-35. And so, the Army awarded the ITSS Contract to Six3 on December 7, 2015. *Id.* at 1768.

### 4. SOSi's GAO Bid Protest And The Army's Corrective Action

Due to delays with the evaluation process for the RFP, the Army extended a task order under Six3's prior contract to provide ITTS services until a new contract could be awarded. *Id.* at 1949-64. To that end, the Army posted a justification and approval for the sole-source extension of this task order on January 7, 2016. *Id.*

The justification and approval provides, in relevant part, that:

> [T]wo technical proposals, including the ultimate awardee's proposal, exceeded specified page limits. This deviation required the Government to consider lengthy discussions and, ultimately, reevaluate all proposals' conformance to the Solicitation by referencing information elsewhere in offerors' submissions and in Government databases.

*Id.* at 1955.

On January 14, 2016, SOSi requested information from the Army regarding whether the two technical proposals mentioned in the justification and approval proposed lower prices than

---

[3] The Source Selection Authority found that [***] technical volume exceeded the 50-page limit by nine pages and that [***] past performance volume also exceeded the 20-page limit for that volume by "a few sentences." AR at 1743, 1757.

SOSi's proposed price.  *Id.* at 1919-20.  The Army responded to SOSi's inquiry on January 15, 2016, and advised that "[t]he two offerors that submitted proposals exceeding the page limits were evaluated as lower priced than SOSi."  *Id.* at 1921.  The Army further advised that the Source Selection Authority disregarded the excess pages contained in the proposals submitted by these offerors during the evaluation process.  *Id.*

On January 19, 2016, SOSi filed a bid protest before the United States Government Accountability Office ("GAO") protesting the Army's decision to award the ITSS Contract to Six3.  *Id.* at 1926-34.  In that protest, SOSi argued that the Army did not comply with the requirements of the RFP in awarding the ITSS Contract to Six3, because the SSA improperly used outside knowledge and information contained in the past performance volume of Six3's proposal to evaluate the RFP's experience subfactor.  *Id.*

On February 18, 2016, the Army's contracting officer issued a notice of corrective action in response to SOSi's bid protest.  *Id.* at 1977-79.  The notice provides that the Army's proposed corrective action will involve:

(1) Amending the Solicitation to clarify its page limitations;
(2) Reopening the competition to the offerors, who originally submitted timely offers;
(3) Holding discussions with those offerors;
(4) Evaluating any revised proposals; and
(5) Issuing a new source selection decision in accordance with the Solicitation's evaluation criteria.

*Id.* at 1978-79.

The contracting officer explained the reasons for the corrective action in a memorandum for the record dated February 18, 2016.  *Id.* at 1980.  In that memorandum, the contracting officer states that:

The Solicitation provided no information about how the Army would count cover pages and indices.  As a result, some offerors may have included such pages in their count, whereas others may not have done so.  This ambiguity prejudices both groups.

*Id.*  The contracting officer also observes in the memorandum that the RFP's instructions to offerors on how to prepare the technical volume do not refer to a table of contents or to a summary, despite the fact that the RFP's Page Limitation Chart mentions a table of contents,

summary and the three technical subfactors in the description of the technical volume. *Id.* at 331, 333-34, 1981.

In addition, the contracting officer further explains that she finds the RFP to be ambiguous regarding the page limitation requirements for the technical volume. *Id.* at 1980-83. Specifically, the contracting officer observes that the punctuation contained in the portion of the Page Limitation Chart that describes the technical volume−one colon after the words "Technical to include" and another colon after the words "Table of Contents"−made it unclear whether the RFP required that responsive proposals include a table of contents in the technical volume. *Id.* at 1981. And so, the contracting officer concludes that corrective action was necessary to "ensure the consistent and correct evaluation of proposals" and that the proposed "corrective action is reasonable, necessary, fair, and will promote confidence in the integrity of the federal procurement process." *Id.* at 1980.

In light of the Army's proposed corrective action, the GAO dismissed SOSi's bid protest on February 19, 2016. *Id.* at 1984. Thereafter, the Army issued a stop-work order directing Six3 to cease work under the ITSS Contract on February 23, 2016. *Id.* at 1986. The Army subsequently notified all offerors who submitted timely offers in response to the RFP–including Six3 and SOSi–that the Army would amend the RFP to clarify the page limitation requirements and reopen the competition for a new contract award. *Id.* at 1987-91. SOSi commenced this litigation challenging the Army's corrective action plan on March 10, 2016. *See generally* Compl.

### B. Procedural Background

SOSi filed its complaint in this matter on March 10, 2016. *See generally* Compl. On that same day, SOSi filed a motion for leave to file the complaint under seal, as well as a motion for a protective order. *See* Mot. for Leave to File Under Seal; Mot. for Protective Order.

On March 11, 2016, the parties participated in a telephonic status conference, during which Six3 orally moved to intervene. *See* Order, March 11, 2016. On March 11, 2016, the Court issued a Scheduling Order, granting SOSi's motion for leave to file its complaint under seal and Six3's motion to intervene. *See id.* On the same day, the Court also issued a Protective Order. *See generally* Protective Order.

On March 25, 2016, the government filed the administrative record in this matter, which the government subsequently corrected on April 15, 2016. *See generally* AR. On April 15, 2016, SOSi filed a motion for judgment upon the administrative record and a memorandum in support of its motion for judgment upon the administrative record. *See generally* Pl. Mot.; Pl. Memo. On May 6, 2016, the government filed a motion to dismiss SOSi's claim or, in the alternative, a cross-motion for judgment upon the administrative record, as well as a response to SOSi's motion for judgment upon the administrative record. *See generally* Def. Mot. On the same day, Six3 filed a cross-motion for judgment upon the administrative record and a response to SOSi's motion. *See generally* Int. Mot. On May 20, 2016, SOSi filed a reply in support of its motion for judgment upon the administrative record and its response to the motions filed by the government and Six3. *See generally* Pl. Rep. Finally, on June 3, 2016, the government and Six3 filed their reply briefs in support of their respective motions. *See generally* Def. Rep.; Int. Rep. These matters having been fully briefed, the Court addresses the pending motions.

## III.   JURISDICTION AND LEGAL STANDARDS

### A.  Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). Under this standard, an award may be set aside if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the Federal Circuit has explained that:

When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,

and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* (quotations omitted). In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citation omitted). The Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted); *see Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

In addition, the Court has long recognized that contracting officers have "'broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition.'" *Amazon Web Servs., Inc. v. United States*, 113 Fed. Cl. 102, 115 (2013) (quoting *DGS Contract Serv., Inc. v. United States*, 43 Fed. Cl. 227, 238 (1999)). But, an agency's corrective action must be "reasonable under the circumstances" and "appropriate to remedy the impropriety." *Id.* (quoting *Reema Consulting Servs., Inc. v. United*

*States*, 107 Fed. Cl. 519, 527 (2012)); *see also Centech Grp., Inc. v. United States*, 78 Fed. Cl. 496, 506 (2007) (citing *Chapman Law Firm Co. v. Greenleaf Const. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007)); *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 151 (2010) ("[T]he agency's corrective action must be rationally related to the defect to be corrected.") (citation omitted); *WHR Grp., Inc. v. United States*, 115 Fed. Cl. 386, 405 (2014) ("The requirement that corrective action be 'targeted' or 'rationally related' to an existing defect in the initial procurement is essential to the integrity of the procurement system."); *but see Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 750-51 (holding that the corrective action need not always "'target the identified defect'") (quoting *Sheridan*, 95 Fed. Cl. at 153). And so, the Court will enjoin an agency from implementing corrective action if the corrective action is unreasonable, or if the corrective action fails to remedy the impropriety. *Id.*

### B. Justiciability

It is well established that the Article III justiciability doctrines–including the doctrines of standing and mootness–apply to this Court. *Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005); *see also Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 321 (2015). These doctrines also impact the Court's ability to exercise jurisdiction over pre-award and post-award bid protest matters. *See, e.g.*, *Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 319.

To establish standing in either a pre-award or post-award bid protest matter, a plaintiff must demonstrate that he or she is an "interested party." 28 U.S.C. § 1491(b). The United States Court of Appeals for the Federal Circuit has applied the Competition in Contracting Act's definition of "interested party" in the context of bid protest matters. *Am. Fed'n of Gov. Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also* 31 U.S.C. §§ 3551-56. Specifically, an "interested party" is a party that "(1) is an actual or prospective bidder" and (2) possesses a "direct economic interest [that] would be affected by the award of the contract or by the failure to award the contract." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citation omitted).

The Court generally treats a challenge to an agency's corrective action involving the withdrawal of a contract award and the reopening of the competition as a pre-award bid protest matter. *See id.*; *Sys. Applic. & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir.

11

2012).  A protestor must demonstrate prejudice to prove a direct economic interest in a pre-award bid protest matter, and the United States Court of Appeals for the Federal Circuit has defined such prejudice as "a non-trivial competitive injury which can be addressed by judicial relief."  *Id.* at 1361-62 (quoting *WinStar Commc'ns, Inc. v. United States*, 41 Fed. Cl. 748, 763 (1998)); *see also Sys. Applic. & Techs., Inc.*, 691 F.3d at 1382.

This Court has held that a non-trivial competitive injury exists if the plaintiff has been "deprived of the opportunity to fully and fairly compete."  *Magnum Opus, Inc. v. United States*, 94 Fed. Cl. 512, 531 (2010) (holding that "there is no meaningful way to further assess the prejudice to the plaintiff after examination of the merits") (citing *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008)).  The Court has also held that a plaintiff has been deprived of the opportunity to fully and fairly compete in instances such as when "the failure to hold a competition was wrongful or there was a material error in the solicitation."  *Id.*  But, the Court has found that the costs incurred by a disappointed offeror for submitting a revised proposal, alone, do not constitute a non-trivial competitive injury.  *See Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 327-28.  When a plaintiff fails to demonstrate a non-trivial competitive injury in a pre-award bid protest matter−or fails to demonstrate that the plaintiff is the actual or prospective offeror−the plaintiff lacks standing to bring suit and the Court must dismiss the case.  28 U.S.C. § 1491(b); *Sys. Applic. & Techs., Inc.*, 691 F.3d at 1382-83; *see* RCFC 12(b)(1).

A plaintiff must also demonstrate that the claims presented in a bid protest matter are not moot.  *See Totolo/King Joint Venture v. United States*, 431 F. App'x 895, 897 (Fed. Cir. 2011).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1296 (Fed. Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  The Court will dismiss as moot a claim for which it can no longer grant relief.  *See Totolo/King Joint Venture*, 431 F. App'x at 896; *Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 324 ("[A] case becomes moot when it is unreasonable to expect 'that the alleged violation will recur, and . . . interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'") (citation omitted).  And so, a challenge to a procuring agency's evaluation and award decision will be dismissed as moot, if the agency has agreed to take corrective action that "'adequately addresse[s] the effects of the challenged agency action, and the Court of Federal

Claims ha[s] no reasonable expectation that the action would recur.'" *Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 324 (brackets existing) (quoting *Chapman Law Firm Co.*, 490 F.3d at 940).

### C. Judgment Upon The Administrative Record

Finally, RCFC 52.1 limits the Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *cf. Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record already in existence.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, unlike a summary judgment motion brought pursuant to RCFC 56, the existence of genuine issues of material fact does not preclude judgment upon the administrative record under RCFC 52.1. *See* RCFC 56; *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011). Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

In addition, when deciding a bid protest matter, the Court "may award any relief that [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc.*, 554 F.3d at 1036-37. In considering whether to issue a permanent injunction, the Court looks to (1) whether the plaintiff succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of hardships to the parties favors granting injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *CW Gov't Travel, Inc. v. United States*, 163 F. App'x 853, 857 (Fed. Cir. 2005); *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). Furthermore, a plaintiff that has not actually succeeded upon the merits of its claim cannot prevail upon a motion for injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005). And so, a plaintiff must show an entitlement to injunctive relief by clear and convincing evidence to prevail upon a request for such relief. *CSE Constr. Co., Inc. v. United States*, 58 Fed. Cl. 230, 261 (2003).

## IV.    LEGAL ANALYSIS

### A.  The Court Must Dismiss SOSi's Claim As Nonjusticiable

As a threshold matter, the Court must dismiss this action because SOSi lacks standing to bring its challenge to the Army's proposed corrective action and SOSi's challenge to the Army's initial contract award decision is also moot.  The government has moved to dismiss SOSi's challenge to the proposed corrective action in this matter upon the ground that SOSi lacks standing to bring this claim.  Def. Mot. at 13, 15, 17-18.  In its opposition to the government's motion to dismiss, SOSi argues that it has standing to pursue this matter because SOSi will be prejudiced by the proposed corrective action.  Pl. Rep. at 3-9.  For the reasons discussed below, SOSi's argument is belied by the evidence contained in the administrative record.

### 1.  SOSi Lacks Standing To Bring Its Claim

The administrative record in this matter clearly demonstrates that SOSi will not suffer a non-trivial competitive injury as a result of the Army's proposed corrective action.  And so, SOSi does not have standing to pursue its claim.

To establish standing in this pre-award bid protest matter, SOSi must demonstrate that it (1) is an actual or prospective bidder and (2) possesses a direct economic interest that would be affected by the award of the ITSS Contract or by the failure to award that contract.  *Weeks Marine, Inc.*, 575 F.3d at 1359 (citation omitted).  It is without dispute that SOSi is an actual bidder for award of the ITSS Contract.  And so, to establish that it has standing to pursue its claim, SOSi must show that it will suffer "a non-trivial competitive injury which can be addressed by judicial relief."  *Id.* at 1362 (quoting *WinStar Commc'ns, Inc.*, 41 Fed. Cl. at 763); *see also Sys. Applic. & Techs., Inc.*, 691 F.3d at 1382.

In its opposition to the government's motion to dismiss, SOSi alleges that it has standing to pursue this matter for two reasons.  First, SOSi contends that it will suffer a non-trivial competitive injury, because the Army's proposed corrective action will force SOSi to re-compete for a contract that SOSi believes it has already "rightfully won."  Pl. Rep. at 5.  In this regard, SOSi also alleges that the record evidence establishes that SOSi already won the ITSS Contract, because the government concedes in this litigation that the initial evaluation process for the RFP was flawed.  *Id.* at 8, 11-13.  Second, SOSi contends that it will also be prejudiced by the

14

proposed corrective action in this case, because reopening the competition would result in SOSi "having to unrealistically lower its price to compete" for the ITSS Contract. *Id*. at 8. Neither of SOSi's arguments are supported by the evidence contained in the administrative record.

First, SOSi's claim that it has standing to bring this matter because SOSi already won the ITSS Contract is speculative and without support in the administrative record. In this regard, it is without dispute that the Army initially awarded the ITSS Contract to Six3. AR at 1768-888. It is also without dispute that, on February 18, 2016, the Army's contracting officer issued a notice of corrective action that, among other things, set aside that contract award. AR at 1977-79. SOSi argues that it has standing because the government acknowledges in this litigation that there were flaws in the evaluation process that led to the award decision. Pl. Memo. at 30-31. But, even if true, such an acknowledgment does not demonstrate that SOSi should have been awarded the ITSS Contract under the circumstances presented by this case. And so, SOSi cannot rely upon the government's recognition of flaws in the evaluation process for the ITSS Contract to establish standing here.

The administrative record also does not support SOSi's argument that SOSI would have been next in line for the award of the ITSS Contract if Six3 had been disqualified. AR at 1732-35. Rather, the record evidence shows that both the Source Selection Evaluation Board and the Source Selection Authority concluded that another offeror−[***]−proposed the next lowest-priced, technically acceptable offer. *Id*. at 1732; 1734-35. While SOSi appears to suggest that [***] should have been disqualified from the competition because [***] technical volume exceeded the RFP's page limitation requirements, there is no requirement in the RFP to disqualify a proposal upon this ground. AR at 176-240, 320-65; Compl. at ¶ 2; Pl. Memo. at 29. Indeed, it is mere speculation to assume that SOSi's proposal should have received a higher rating than [***] proposal. And so, again, the record evidence simply does not support SOSi's argument that it has standing to pursue this action.

In addition, SOSi's novel argument that it will be prejudiced by having to "unrealistically lower its price beyond the price proposed by Six3" during the re-competition for the ITSS Contract is similarly without merit or legal support. Pl. Rep. at 5; *see* Pl. Memo. at 16-17. Specifically, SOSi argues that it has standing because SOSi will be forced to offer a lower price during the re-competition for the ITSS Contract, due to the disclosure of Six3's price following

the initial award of the ITSS Contract.  Pl. Rep. at 5, 8.  As SOSi notes in its motion for judgment upon the administrative record, the United States Court of Appeals for the Federal Circuit has held that the original awardee of a contract has standing to challenge subsequent agency corrective action upon the ground that it is prejudiced by the corrective action because the awardee's price has been disclosed.  Pl. Memo. at 35; *Sys. Applic. & Techs., Inc.*, 691 F.3d at 1382-83; *see also Wildflower Int'l., Ltd. v. United States*, 105 Fed. Cl. 362, 391 (2012) (holding that plaintiff, the initial awardee, had standing to challenge corrective action but, ultimately, upholding the corrective action).  But, the Federal Circuit has not held−as SOSi contends here−that an *unsuccessful offeror* has standing to challenge corrective action involving the reopening of competition because of the disclosure of the initial awardee's pricing information. *See Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 325 ("[P]laintiff has not pointed to any case, and the court is aware of none, in which the court proceeded to address on the merits a protest by an unsuccessful offeror (as opposed to the original awardee) of an agency's original evaluation of proposals after the agency had agreed to take corrective action.").  Indeed, SOSi cites no case law to support this unusual proposition.  Pl. Memo. at 15-17; Pl. Rep. at 3-10. Given this, SOSi has not demonstrated that it will suffer a non-trivial competitive injury as a result of the Army's proposed corrective action in this case.  And so, the Court must dismiss SOSi's claim.  *Am. Fed'n of Gov. Emps., AFL-CIO*, 258 F.3d at 1302; *see* RCFC 12(b)(1).

### 2.  SOSi's Challenge To The Army's Award Decision Is Moot

To the extent that SOSi is challenging the Army's initial decision to award the ITSS Contract to Six3, the Court must also dismiss such a claim as moot.  *See* Pl. Memo. at 29-30; Pl. Rep. at 12-13.  It is well settled that "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Caraco Pharm. Labs., Ltd.*, 527 F.3d at 1296 (quoting *Powell*, 395 U.S. at 496).  This Court has also held that a challenge to a procuring agency's evaluation and award decision will be dismissed as moot, if the agency has agreed to take corrective action that addresses the effects of the challenged agency action and if the Court does not expect that the alleged violation will reoccur.  *See, e.g.*, *Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 324-26.

In this case, it is undisputed that the Army's contracting officer issued a notice of corrective action on February 18, 2016, and that this corrective action will, among other things,

set aside the award to Six3, clarify the RFP's page limitation requirements and reopen the competition.  AR at 1977-79.  These undisputed facts make clear that any challenge to the original evaluation of proposals for the ITSS Contract has been mooted by the Army's decision to take corrective action.  *Cf. Square One Armoring Serv., Inc.*, 123 Fed. Cl. at 325-26.  And so, the Court must also dismiss any claim challenging the Army's initial decision to award the ITSS Contract to Six3 as moot.  RCFC 12(b)(1).

### B.  The Proposed Corrective Action Is Reasonable

Even if SOSi could demonstrate that its claim is justiciable, the administrative record also demonstrates that the proposed corrective action in this matter is reasonable and appropriate under the circumstances presented.  In this regard, the parties have filed cross-motions for judgment upon the administrative record upon the issue of whether the Army's proposed corrective action is reasonable under the circumstances of this case.  *See generally* Pl. Mot.; Def. Mot.; Int. Mot.  In its motion for judgment upon the administrative record, SOSi argues that the proposed corrective action is arbitrary, capricious, an abuse of discretion and unlawful, because the RFP is not ambiguous with respect to the page limitation requirements for the technical volume.  Pl. Memo. at 19-24; *see also* Compl. at ¶¶ 37-38; Pl. Rep. at 15-20.  The government and Six3 counter that the proposed corrective action is reasonable here, because the RFP is ambiguous with respect to these requirements.  Def. Mot. at 24 ; Int. Mot. at 16-31.  For the reasons discussed below, the administrative record shows that the Army's proposed corrective action appropriately addresses an ambiguity in the RFP regarding the page limitation requirements.

### 1.  The RFP's Page Limitation Requirements Are Ambiguous

As an initial matter, a plain reading of the RFP demonstrates that the RFP is ambiguous with respect to the page limitation requirements for the technical volume.  The RFP does not expressly state whether a table of contents−or any reference pages−should be included in the total page count for purposes of complying with the RFP's page limitation requirements for the technical volume.  *Id.* at 176-240; 320-65.  In fact, while the chart mentions a "table of contents," "summary," and three subfactors below the phrase "Technical to include," the Page Limitation Chart does not state whether a page containing the table of contents, or other reference pages,

should be included in the total page count for the purpose of complying with the RFP's page limitation requirements. *Id.* at 331.

The RFP's proposal preparation instructions further contribute to the lack of clarity surrounding the RFP's page limitation requirements. *Id.* at 330-36. These instructions set forth the requirements for the contents of the technical volume. *Id.* But, the instructions do not address or explain how offerors should count a table of contents or other reference pages for purposes of complying with the RFP's page limitation requirements. *Id.* at 333-34. The RFP is otherwise silent about whether to count a table of contents, summaries and references pages toward the total page count. *Id.* at 176-240, 320-65. Given this, the RFP is ambiguous with respect to how offerors—and the Army—would determine compliance with the RFP's page limitation requirements.[4]

A review of the other evidence in the administrative record further supports the conclusion that the page limitation requirements set forth in the RFP are ambiguous. In particular, the administrative record shows that three of the seven offerors that submitted proposals in response to the RFP put forward proposals that exceeded the RFP's page limits, if tables of contents and other reference pages are included in the total page count. *Id.* at 497-517; 562-641; 903-56. For example, [***] submitted a technical volume that contains 59 pages, including a cover page, nine reference pages and 49 substantive pages. *Id.* at 562-620. [***] and [***] also both submitted proposals containing a past performance volume that exceeds 20 pages, if tables of contents, other reference pages and summaries are counted. *Id.* at 497-517; 621-41. And so, the evidence in the administrative record suggests that the offerors that submitted proposals in response to this RFP had different understandings about how to comply with the RFP's page limitation requirements.

The lack of clarity in the RFP about how to comply with the RFP's page limitation requirements is further evidenced by the disagreement that occurred within the Army about how to satisfy these requirements. The administrative record shows that the Army's Source Selection

---

[4] After determining that a contract is ambiguous, the Court typically determines whether such an ambiguity as patent or latent. *Jowett, Inc. v. United States*, 29 F. App'x 584, 587 (Fed. Cir. 2002). In this case, classification of the RFP's ambiguity as patent or latent is not relevant to whether the proposed corrective action is reasonable. And so, the Court does not reach this issue.

Evaluation Board evaluated all of the pages contained in the technical volume for each proposal that the Army evaluated, even if the total number of pages in that volume exceeded the page limit provided in the Page Limitation Chart. *Id*. at 1676-732. But, during a subsequent evaluation, the Army's Source Selection Authority disregarded what it determined to be "excess" pages in conducting its evaluation. *Id*. at 1737, 1743, 1757. And so, the evidence in the administrative record demonstrates that the Army, as well as many of the offerors, had different interpretations of the RFP's page limitation requirements.

### 2.  The Corrective Action Is Appropriate To Remedy The Ambiguity

Given the ambiguity in the RFP regarding the page limitation requirements, the Army's proposed corrective action is appropriate here. In this case, the Army's contracting officer has proposed corrective action to address this ambiguity because "[the solicitation] provided no information about how the Army would count cover pages and indices." AR at 1980. To that end, the Army proposes to: (1) amend the subject solicitation for the ITSS Contract to clarify its page limitations; (2) reopen the competition to the offerors that originally submitted timely offers; (3) hold discussions with those offerors; (4) evaluate the revised proposals; and (5) issue a new award decision. *Id.* at 1978-79. The Army's plan to allow offerors to submit new proposals after the government clarifies the RFP's page limitation requirements directly addresses the ambiguity in the RFP. *Id.* Moreover, as the Army's contracting officer observes in her memorandum explaining the proposed corrective action, the steps to be taken by the Army to address this ambiguity will clarify the page limitation requirements and ensure a fair and impartial competition for all offerors. *Id.* at 1980.

The proposed corrective action is reasonable under the circumstances presented in this case and appropriate to fix the ambiguity in the RFP. *Amazon Web Servs., Inc.*, 113 Fed. Cl. at 115; *see also Sheridan Corp.*, 95 Fed. Cl. at 151. And so, the Court grants the cross-motions for judgment upon the administrative record filed by the government and Six3 with respect to this issue.

### C.  SOSi Is Not Entitled To Permanent Injunctive Relief

Lastly, because SOSi has not prevailed upon the merits of its claim, SOSi is not entitled to the injunctive relief that it seeks in this matter. In its motion for judgment upon the administrative record, SOSi requests that the Court permanently enjoin the Army from

proceeding with the proposed corrective action in this matter.  Pl. Memo. at 32.  SOSi must demonstrate that it has succeeded upon the merits of its claim in order to obtain such relief.  *CW Gov't Travel, Inc.*, 163 F. App'x at 857 (holding that for a party to prevail upon a request for injunctive relief, such party must show that (1) it has succeeded upon the merits of its claim; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) the balance of hardships to the parties favors granting injunctive relief; and (4) it is in the public interest to grant injunctive relief); *Argencord Mach. & Equip., Inc.*, 68 Fed. Cl. at 176 ("A plaintiff that has not actually succeeded on the merits of its claim cannot prevail on its motion for injunctive relief.") (citation omitted).

SOSi makes no such showing here.  As discussed above, SOSi lacks standing to pursue its challenge to the Army's proposed corrective action and its challenge to the Army's initial decision to award the ITSS Contract to Six3 is also moot.  Moreover, even if SOSi did have standing to bring its claim, the administrative record demonstrates that the Army's proposed corrective action is reasonable under the circumstances of this case.  And so, the Court must deny SOSi's request for injunctive relief.  *See Argencord Mach. & Equip., Inc.*, 68 Fed. Cl. at 176.

## V.    CONCLUSION

In sum, the administrative record in this matter clearly demonstrates that SOSi lacks standing to pursue its challenge to the Army's proposed corrective action, because SOSi cannot demonstrate that it will suffer a non-trivial competitive injury as a result of this corrective action.  Moreover, to the extent SOSi challenges the Army's initial decision to award the ITSS Contract to Six3, SOSi's claim is also moot.

In addition, even if SOSi could demonstrate standing to pursue its claim, the administrative record also shows that the Army's corrective action is reasonable under the circumstances of this case.  Finally, SOSi has not demonstrated that it is entitled to the injunctive relief that it seeks in this action, because SOSi has not succeeded upon the merits of its claim.

And so, for the foregoing reasons, the Court:

**1.  DENIES** SOSi's motion for judgment upon the administrative record;

2. **GRANTS** the government's motion to dismiss or, in the alternative, for judgment upon the administrative record; and

3. **GRANTS** Six3's motion for judgment upon the administrative record.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on March 11, 2016.  This Memorandum Opinion and Order shall therefore be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The Court hereby **ORDERS** that the parties **FILE** a joint status report, on or before **August 16, 2016**, identifying the information, if any, that they contend should be redacted in this Memorandum Opinion and Order, together with an explanation of the basis for each proposed redaction.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge